## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EDGAR GUZMAN, | : | |
| Movant, | : | |
| | : | CA 05-214ML |
| vs. | : | |
| | : | CA No. 01-134T |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |
| | : | |

### MEMORANDUM OF LAW IN SUPPORT OF EDGAR GUZMAN'S
### MOTION TO VACATE, SET ASIDE, OR CORRECT
### SENTENCE PURSUANT TO 28 U.S.C. § 2255

Movant Edgar Guzman ("Guzman"), proceeding pro se, submits
this memorandum of law in support of his § 2255 motion.  Guzman
contends that (1) the district court should apply principles of
equitable tolling to render Guzman's § 2255 motion timely; (2)
trial counsel was constitutionally ineffective for not investig-
ating Guzman's Criminal History and further objecting to said
Criminal History at sentencing.  Appellate counsel was constitu-
tionally ineffective for not addressing this claim on direct appeal;
(3) Guzman's sentence had been unlawfully enhanced by facts not
found by the jury or admitted by him; (4) trial counsel was con-
stitutionally ineffective for not investigating whether or not a
shotgun even existed; an "existence" legally necessary to support
the district court's ruling that Guzman should be enhanced two points
for possession of a weapon; (5) trial counsel was constitutionally
ineffective for conceding to rather than objecting to the obstruction
of justice enhancement and the corresponding denial of an acceptance

of responsibility reduction;   (6)  Appellate counsel was con-
stitutionally ineffective for not alleging on direct appeal the
illegality (unconstitutionality) of the December 20, 2003 search
warrant;[1] (7) Appellate counsel was constitutionally ineffective
for not following-up on trial counsel's timely objection to DEA
Agent Drouin's hearsay testimony and claiming that the district
court abused its discretion in allowing said testimony into the
sentencing record. The above grounds will be addressed below
seriatim.

Accordingly Guzman requests this Court to withdraw the plea
and set aside his sentence or, in the alternative, re-sentence
Guzman to the counseled and anticipated sentence of 10 years im-
prisonment or, in the alternative, re-sentence him under the Guide-
line range 188-235 months.  Disputed facts and facts outside the
record, if any, can only be properly resolved through a hearing.

## STATEMENT OF THE CASE

Factual Background

On February 26, 2001, in the District of Rhode Island (Lisi, J.),
Guzman entered a plea of guilty to one count of distribution of 50.9
grams of cocaine base and one count of possession with intent to
distribute 278.7 grams of cocaine base.  On October 25, 2002, Guzman
was sentenced to 324 months in prison.

Immediately following sentencing, on November 4, 2002, notice
of appeal was served and filed.  On September 26, 2003, the First
Circuit Court of Appeals affirmed the judgment of the district court.

---

1.

On May 17, 2005, Guzman amended his § 2255 motion by adding
Ground 7, which is now referred to as Ground Six.

See United States v. Guzman, No. 02-2433, 1st Cir. September 26, 2003 (unpublished).

Subsequently, a petition for a writ of certiorari was filed; however, certiorari was denied on February 23, 2004. On May 16, 2005, Guzman filed the instant § 2255 motion. Additionally, Guzman requested 40 days in which to subsequently file his Memorandum of Law. On May 25, 2005, the Court ordered respondent to answer said petition; however, the Court remained silent about Guzman's requested 40 days. This hastily prepared pro se Memorandum of Law follows.

Procedural Background

On February 26, 2001, William Edwardo Mejias-Arias, a.k.a. Edgar Guzman, appeared before the District of Rhode Island and entered a plea of guilty on an indictment charging him with one count of knowingly and intentionally distributing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and one count of knowingly and intentionally possessing with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Specifically, Guzman pled guilty to one count of distribution of 50.9 grams of cocaine base and one count of possession with intent to distribute 278.7 grams of cocaine base. Guzman entered his plea subsequent to a written agreement with the United States government and fully expecting a three (3) point reduction for his acceptance of responsibility.

After his change of plea, the Court continued Guzman's sentencing. In the interim, the probation department determined that

3

Guzman provided a false name to the Court. As a result, the Presentence Report ("PSR") placed Guzman's total offense level at 38 and his Criminal History Category at level IV. The calculus was based on a 2 level enhancement for possession of a weapon allegedly found in the basement storage of the apartment building where Guzman (and other tenants) lived. The weapon, however, was not mentioned in the indictment at all. Nor, was it mentioned in the plea agreement. The record indicates that initially Guzman anticipated his sentence would be 10 years imprisonment (Transcript I at 12)[2] Under the new calculation, however, the minimum potential penalty rose to 27 years.

The grounds addressed below are indeed serious. Questions demanding answers are: (1) whether the shotgun ever existed; (2) was the use of uncorroborated hearsay testimony at sentencing properly admitted or was Guzman's confontation rights violated; (3) did the Court correctly analyze the Fourth Amendment issue; (4) did the government violate contract law, i.e., this paragraph is binding, however, this other paragraph is not; (5) was trial and appellate counsel's performance deficient under Strickland and was Guzman prejudiced.

The Court should find that equitable tolling is applicable to this fact-specific case, and address the merits of the grounds below.

---

2.

  Transcript of hearing, February 26, 2002 (hereinafter "Tr. I").

## GROUND ONE

### The District Court Should Apply Principles Of Equitable Tolling To Render Guzman's § 2255 Motion Timely.

As stated in ¶ 18 of the § 2255 motion, Guzman was seriously misled into a false belief that his petition for certiorari was denied on July 19, 2004 and, from that false belief that he had one year from July 19, 2004 until July 19, 2005, in which to file a timely § 2255 motion. See Clay v. United States, 537 U.S. ___, 155 L.Ed.2d 88, 123 S.Ct. ___ (2003).

In retrospect, after appellate counsel advised Guzman that his writ of certiorari was filed with the United States Supreme Court, Guzman stayed on top of his writ as best as prison conditions would allow him to.

Guzman wrote more than twenty-three (23) letters[3] addressed to appellate counsel (Mr. Demissie) and the Clerk, United States Supreme Court (Mr. Suter); however, with the exception of the July 19, 2004 and April 19, 2005 responses, Guzman's letters otherwise yielded no responses. See Exhibit 1 attached hereto; affidavit of Edgar Guzman ¶¶ 2&3, dated June 9, 2005.

Moreover, Guzman persistantly checked with the prison mail room and their records fully support that Guzman received no legal mail (no responses to his myriad of inquiries). See Exhibit 1 ¶3.

After receiving Mr. Demissie's April 19, 2005 letter on April 26, 2005, Guzman immediately filed a blind § 2255 motion on May 11,

---

3.

  Although Guzman wrote more than 23 letters, unfortunately he can only account for 23 of them.

5

2005 and additionally asked the Court for another forty (40) days
in which to file his supporting memorandum of law.  See Exhibit 1,
¶4.  The Court subsequently ordered respondent to Answer Guzman's
blind motion; however, the Court remained silent on his request
for additional time to file his supportive memorandum of law.  Id.

The Supreme Court has explained:

> [D]istrict judges often will not be able to
> make [AEDPA limitations] calculations based
> solely on the face of habeas petitions ....
> [As] [s]uch calculations depend on informa-
> tion contained in documents that do not nec-
> essarily accompany the petitions.

Pliler v. Ford, 542 U.S. 225, 124 S.Ct. 2441, 2446, 159
L.Ed.2d 338 (2004) (citation omitted).  Even when the record
papers are obtained, it can be difficult to decipher what a pro
se habeas movant has done.  Id. Due to financial problems, coupled
with penitentiary constraints, Guzman cannot at this time copy all
the documents in his possession; documents supporting equitable
tolling.  However, if the Court deems it necessary to have these
documents (23 letters) as part of the record, Guzman moves the
Court to enjoin prison officials to make copy(ies) of the requested
documents & forward to the Court.

Tolling issues are highly fact-dependent.  Assuming, arguendo,
and aside from Guzman's affidavit, affidavits from Demissie and
Suter were, indeed, sought and obtained and submitted to the Court,
the thread issue common to each sworn affidavit is credibility.
Resolution of this case, specifically whether equitable tolling
should apply in this specific case, on the basis of affidavits can
rarely be conclusive.  See Jordan v. Estelle, 594 F.2d 144, 145-46

(5th Cir. 1979) ("Although a habeas petition may be decided on the basis of affidavits, contested facts ordinarily may not be decided on the basis of affidavits alone [.]" (citations ommitted)) (quoting from <u>Vineyard v. Dretke</u>, 125 Fed. Appx. 551, 553 (5th Cir. 2005)).

Premises considered, Guzman is entitled to equitable tolling of the one-year statute of limitations or, in the alternative, if there are contested facts, an evidentiary hearing should be held because the unavoidable question of credibility supporting Guzman's claim that equitable tolling applies can only be fairly parsed and adjudicated in such an observing setting.

**GROUND TWO**

**Trial Counsel Was Constitutionally Ineffective
For Not Investigating Movant Guzman's Criminal History
And Further Objecting To Said Criminal History At Sentencing.
Appellate Counsel Was Constitutionally Ineffective For Not
Addressing This Claim On Direct Appeal.**

Guzman's Criminal History Category was established at level IV. However, category points were attached to one of his alleged "priors"; a prior neither investigated by trial counsel nor proved by a preponderance to have been committed by Guzman. The sentencing transcript is devoid findings on this score. The prior in question was allegedly committed in Roxbury, Massachusetts on 10/06/2000. Had trial counsel investigated this offense, he would have found that Guzman was incarcerated and serving a three year sentence at Middleton Correctional Facility at the time the offense was committed. <u>See</u> Exhibit 2 attached hereto, letter from Edgar Guzman to Honorable Clerk, Roxbury District Court dated January 28, 2004.

7

Based on the above, counsel's performance was deficient and Guzman was prejudiced as a result therefrom by receiving an illegal and unwarranted term of imprisonment. This claim was readily apparent from the record ergo appellate counsel should have addressed the claim on appeal of right.

Guzman should be re-sentenced under Criminal History Category III.

### GROUND THREE

#### Guzman's Sentence Was Unlawfully Enhanced By Facts Not Found By The Jury Or Admitted By The Defendant

In the case sub judice Guzman's offense level was increased by two (2) points for possession of a weapon, and two (2) points for obstruction of justice. See Transcript II at pp. 65, 67.[4] Neither of these enhancements was contained in the Indictment, submitted to a jury, nor proven beyond a reasonable doubt. In fact, as to the gun, defense counsel specifically referenced the fact that the weapon was not listed in the Indictment but rather was brought in as an enhancement in an effort, inter alia, to circumvent the reasonable doubt standard.[5]

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime

---

4.

Transcript of hearing, October 25, 2002 (hereinafter "Tr. II").

5.

Although this argument was advanced in an effort to convince the court that, given the facts of the case, the exclusionary rule should apply in the sentencing context, see Ground Six, infra, it is, in essence, an Apprendi argument.

8

beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Apprendi Court went on to note that "[t]he judge's role in sentencing is constrained at its outer limits by the facts alleged in the indictment and found by the jury. Put simply, facts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition 'elements' of a separate legal offense." Id. at 483, n10. Thus, it should have come as no surprise to anyone when, in Blakely v. Washington, 542 U.S. ___, 159 L.Ed.2d 403, 413 (2004), the Court stated: "Our precedents make clear, however, that the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (emphasis in original) (citations omitted). See also Ring v. Arizona, 536 U.S. 584, 602 (2002) ("'the maximum [the defendant] would receive if punished according to the facts reflected in the jury verdict alone'") (quoting Apprendi, supra, at 483). It was, therefore, the Supreme Court's precedents, and not Blakely, that first established a defendant's Sixth Amendment right to have any sentencing enhancements submitted to a jury and proved beyond a reasonable doubt. In other words, Blakely did not announce a new rule of constitutional law. Instead, Blakely merely "require[d] [the Court] to apply the rule [they] expressed in Apprendi, [supra]." Blakely at 412 (emphasis added).[6] It is because Blakely did not announce

---

6.

See also Yates v. Aiken, 484 U.S. 211 (1988)("[T]he Francis [v. Franklin, 474 U.S. 896 (1985)] decision did not announce a new constitutional rule but merely applied the principles previously announced in Sandstrom v. Montana, [442 U.S. 510 (1979)]").

a new rule of criminal procedure that Justice O'Connor correctly observed that "...all criminal sentences imposed under the federal and state guidelines since Apprendi was decided in 2000 arguably remain open to collateral attack." Blakely at 426 (O'Connor, J., dissenting) (citing Teague v. Lane, 489 U.S. 288, 301 (1989)) (plurality opinion) ("[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final") (emphasis in original) (footnote omitted).

Turning now to the case at bar, it is clear that Guzman's Sixth Amendment rights were violated when the district court increased Guzman's sentence based on facts not found by the jury (or admitted by the defendant). Moreover, the district court used a preponderance of evidence standard as opposed to the reasonable doubt standard required by Apprendi. The question, then, is what remedy, if any, is available to Guzman?

As discussed above, there is no issue of retroactivity involved because Blakely stated the law as it existed immediately following the Apprendi decision (if not the Magna Carta), and Guzman's illegal conduct postdated Apprendi.

However, the waters become a little murkier when assessing whether or not Guzman preserved his Apprendi/Blakely claim as to the obstruction enhancement. It is clear that counsel vehemently objected to the gun enhancement, and did so on grounds virtually indistinguishable from the rationale of Apprendi. See Str. 57-58. Therefore, as to the gun, Guzman's Apprendi claim should be considered preserved for the purpose of his section 2255 motion, and

10

no showing by Guzman of cause and prejudice should be required. See United States v. Frady, 456 U.S. 152 (1982).

But as to the obstruction of justice enhancement, there is some confusion as to whether trial counsel waived the issue, at the sentencing hearing, trial counsel stated that he didn't want to waive the obstruction of justice and acceptance of responsibility issues. However, when the judge told counsel to either make the arguments, or "you've waived them," counsel stated, "I have no arguments that I can make to the court on issues other than what I'm presenting right now. Tr. II at p. 52.

In any case, it is axiomatic that a showing of constitutionally ineffective assistance of counsel can satisify the "cause" require-ment described in Frady, supra.

Here, the record reflects that trial counsel's opposition to the gun enhancement, based, at least in part, on the fact that the gun was not presented to the grand jury, listed in the Indictment and proved beyond a reasonable doubt, showed that the germ of Apprendi had at least taken root in the mind of counsel. This being the case, it is inexplicable why counsel would not apply the same reasoning as to the obstruction enhancement. Admittedly, the effort likely would have been futile at the time given the courts' routine misrepresentation of Apprendi, but at least the issue would have been preserved. Counsel's omission on this acore is especially egregious considering Ring, supra had been decided four months prior to Guzman's sentencing hearing and had reminded the lower courts that Apprendi stood for the proposition that "[a]

11

defendant may not be exposed to a penalty <u>exceeding</u> the maximum
he would receive if punished according to the facts reflected in
the jury verdict alone." <u>Ring</u>, at 564 (emphasis added) (citing
<u>Apprendi</u> at 483).  A reasonably competent attorney should have seen
which way the <u>Apprendi</u>-winds were blowing, and should have objected
to any sentence enhancement based on <u>Apprendi's</u> rationale.

In the light of the above, the following is clear:

(a) Guzman's challenge to the gun enhancement is ad-
equately preserved for <u>Blakely</u> purposes;

(b) the gun enhancement violated Guzman's Sixth Amend-
ment right to trial by jury, and the error affected Guzman's
substantial rights;

(c) Guzman did not preserve his objection to the ob-
struction enhancement, but his attorney's failure to do so
constitutes ineffective assistance of counsel, so the pro-
cedural default should be excused on that ground; and

(d) the obstruction enhancement constitutes error, and
the error affected Guzman's substantial rights.

Therefore, Guzman must be re-sentenced within the Guideline
range established by the facts listed in the Indictment, submitted
to a jury and proved beyond a reasonable doubt (or admitted by the
defendant).[7]

---

7.

The <u>Booker</u> Remedy does not apply here, as it constitutes a
new rule which has not been made retroactive to cases on
collateral review.

12

**GROUND FOUR**

**Trial Counsel Was Constitutionally Ineffective For Not Investigating Whether Or Not A Shotgun Ever Existed; An "Existence" Legally Necessary To Support The District Court's Ruling That Movant Guzman Should Be Enhanced Two Points For Possession Of A Weapon.**

In any ineffective assistance of counsel case, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland v. Washington, 466 U.S. 668, 691 (1984). In other words, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-691.

In the case at bar, defense counsel performed no investigation to determine the existence, vel non, of the shotgun purportedly found in the basement of the building Guzman resided in. This is particularly disturbing considering it was counsel's contention that the gun never existed. See Tr. II 43, 54-57. Counsel could not at once deny the existence of the gun and then make a reasonable decision that investigation into its existence was unnecessary. In fact, at the sentencing hearing the Court rebuked counsel by stating:

> ...[I]f you're going to dispute the existence of the gun that they say was found in the basement, it seems to me you should have done a little homework before today, and that is to go look at it. So I'm not going to accept your argument today that it dosen't exist when you, apparently, didn't feel it necessary to go and take alook at it.

Tr. II at p. 55. At this point, counsel stated, "Your Honor,

13

whether they had it at ATF doesn't necessarily mean that it was
at the premises.  It means they're saying it was at the premises."
Id. If counsel, contrary to the tenor of his original argument
(that the gun did not exist), believed that the gun could have
been planted, why, then, did he take no steps to identify and
interview the ATF agent who allegedly took possession of the gun
from the DEA Special Agent Jean Drouin?  Or, why did counsel fail
to interview the DEA's confidential source, John Corsatta, to
determine whether he told Drouin that Guzman told him (Corsatta)
that he had, inter alia, a sawed off shotgun, and that he would
sell it to Corsatta as part of a drug transaction?  The latter
question assumes additonal significance when viewed against the
backdrop of the Government's aparent aversion to putting Mr.
Corsatta on the witness stand.  Tr. II at pp. 10-11.

Under either theory - the nonexistence of the gun, or the gun
being planted - counsel had a duty to conduct a reasonable invest-
igation.

Turning now to the prejudice prong of Strickland, a "defendant
must show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different.  A reasonable probability is a prob-
ability sufficient to undermine confidence in the outcome." Id.
at 694.

In this case, the gun enhancement added over five years to
Guzman's sentence.  Apart from the Fourth Amendment issue discussed
in Ground Six, infra, the Court found, at least by implication,

14

that (a) the gun existed; and (b) the gun was not planted.  Additionally, the court explicitly found that gun was connected to the underlying offense so as to warrant the two-point enhancement under 2(d)1.1 (B)(1). Tr. II 65-66.

Admittedly, absent a full evidentiary hearing, it will be virtually impossible for Guzman to show either that the gun did not exist, or that it was planted.  But in terms of the connection between the alledged weapon and the underlying offense, the fact that the Government resisted the idea of Mr. Corsatta testifying, and instead insisted on Agent Drouin summarizing his conversations with the confidential source, suggests that Mr. Corsatta likely would not have bridged the alleged weapon with the underlying offense.  This assertion is further supported by the fact that the Government chose not to introduce into evidence the recordings (or the transcripts of the recordings) between the confidential source and Guzman.  Moreover, the Government did not even call to testify DEA Special Agent Fernando Cruz, who was monitoring and translating in real time the conversation, which was in Spanish, between Mr. Corsatta and Guzman.  What is more disturbing, however, is the fact that defense counsel failed to request a copy of the audio and video surveillance tapes or to interview Agent Cruz.

All of the above is sufficient to undermine confidence that the gun enhancement was appropriate.

In light of the above, Guzman should be granted a full evidentiary hearing as to this issue, or, in the alternative, he should be re-sentenced without the 2(d)1.1 (B)(1) enhancement.

15

## GROUND FIVE

**Trial Counsel Was Constitutionally Ineffective For Conceding To Rather Than Objecting To The Obstruction Of Justice Enhancement And The Corresponding Denial Of An Acceptance Of Responsibility Reduction.**

What this claim necessarily encompasses is the claim that the Government breached its plea agreement, and that counsel failed to object.

In <u>Santobello v. New York</u>, 404 U.S. 257 (1971) the Supreme Court declared that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." <u>Id</u>. at 262.

At the sentencing hearing, the prosecutor stated the following:

> "We stick by the terms of our plea agreement that whatever the defendant's sentencing range we will recommend the low end.  He after all did enter his plea at a time when we were not required to invest the resources in fully preparing this case for trial which does merit still its recognition.  <u>And we intend to stick by our agreements</u>.

Tr. II at pp. 68-69 (emphasis added).  The Government, however, did not stick by all the terms of its agreement.  In paragraph 2c, the plea agreement states: "For purposes of determining the offense level, the government agrees to recommend a 2 or 3 level reduction in the offense level, whichever is applicable , for acceptance of responsibility under § 3E1.1 of the guidelines."[8]  The Government breached this section of the agreement.  The record is clear that

_____

8.

    The Court should take judicial notice that the Plea Agreement is part of the official record.

the Government did not recommend a reduction in the offense level
for acceptance of responsibility.

Perhaps the Government felt it had good reason to breach the
agreement, but that does not detract from the indisputable fact
that the Government failed to stick by the terms of said agreement.
Moreover, because the breach was so blatant, defense counsel's
failure to object to the violation "fell below an objective stand-
ard of reasonableness." Strickland, supra, at 688, and the prejudice
that resulted from counsel's deficient performance is clear.

In Santobello, the Supreme Court indicated that there are two
ways to remedy the government's breach of a plea agreement: giving
the defendant "the opportunity to withdraw his plea of guilty,"
or "specific performance of the agreement." 404 U.S. at 263.  If
restricted to the first option, Guzman most certainly would have
moved to withdraw his guilty plea (see Declaration, infra, p. 29  ).
This being the case, under either rubric the outcome of the pro-
ceeding would have been different.

In light of the above, Guzman respectfully requests that he
be allowed to withdraw his guilty plea, or, that specific perform-
ance of the agreement be enforced by resentencing Guzman within
the terms of the agreement.

After all, "a prosecutorial failure to fulfill a promise or
to make a proper promise is not rendered harmless because of jud-
icial refusal to follow the recommendation or judical awareness
of the impropriety." Carreale v. United States, 474 F.2d 944,
949 (1st Cir. 1973).  Thus, even if it is determined that the

17

prosecutor's breach had no effect on the Guzman's sentence, he is still entitled to a remedy.  See e.g. United States v. Clark, 55 F.3d 9, 13 (1st Cir. 1995).  Defense counsel had a duty to insist that the government adhere to the terms of its plea agreement, and expressly waiving the issue by conceding that Guzman had not accepted responsibility, constitutes a violation of Guzman's Sixth Amendment right to effective assistance of counsel.  Even if counsel felt that Guzman had not accepted responsibility for his conduct, he still had a fiduciary duty to move for the withdrawal of Guzman's guilty plea when the Government failed to make the promised recommendation.

## GROUND SIX

**Appellate Counsel Was Constitutionally Ineffective
For Not Alleging On Direct Appeal The Illegality
(Unconstitutionality) Of The December 20, 2003 Search Warrant.**

This claim expresses in general terms the more specific contention that appellate counsel was constitutionally ineffective for failing to argue that evidence of the gun should have been excluded in the context of sentencing because (a) the gun was seized illegally; (b) the district court's interpretation — based on language in United States v. Acosta, 303 F.3d 78, 84-86 (1st Cir. 2002), that the Fourth Amendment violation had to be intentional — is at odds with the rationale of several circuits that have considered the issue; (c) even if the district court's interpretation was correct, the police intentionally acted illegally; and (d) the police acted with the intention of enhancing

Guzman's sentence.[9]

To establish ineffective assistance of appellate counsel, a defendant "must first show that his counsel was objectively unreasonable." Smith v. Robbins, 528 U.S. 259, 285 (2000). This standard is difficult to meet because, to be effective, "appellate counsel...need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." Id. at 288. If a defendant succeeds in making that showing, he must still "show a reasonable probability that, but for his counsel's unreasonable failure to [raise a particular issue], he would have prevailed on his appeal." Id. at 285.

In the case at bar, Guzman contends that: (a) the gun was seized illegally; (b) the district court applied an incorrect standard in evaluating the Acosta issue; (c) even if the court applied the correct standard, the evidence shows that there was an intention to violate the Fourth Amendment; and (d) the agents acted with a view and a purpose of increasing Guzman's sentence.

**A. The gun was seized illegally.**

It is undisputed that the alleged gun was seized in a section of the building not included in the search warrant. Tr. II at 50. The district judge stated, "I am assuming for purposes of this hearing

---

9.

   Although the district court determined that the Fourth Amendment violation had to be intentional, Tr. II at p. 61, the Court did not determine what type of intent must be demonstrated, i.e., constructive intent, general intent, immediate intent, manifest intent, specific intent, transferred intent or ulterior intent.

that [the gun] was seized in violation of the fourth amendment
(sic) without deciding that because I think that I can decide
this issue by looking at the language in Acosta." Tr. II at 64.
There is more than a reasonable probability that the First Circuit
Court of Appeals would have made the same assumption had appeallate
counsel pursued the Acosta issue in that Court.

### b. The District Court applied an incorrect standard in evaluating the Acosta issue.

At the October 25, 2002 sentencing hearing, the Judge stated:

> "What the Court did say in Acosta was that they
> left open the question of whether the exclusion-
> ary rule would bar the use of evidence when police
> intentionally act in violation of the forth Amend-
> ment (sic) in order to increase a defendant's
> sentence.
> "Now, that langauge in my judgment places a
> very heavy burden on a defendant who seeks to
> exclude evidence from the sentencing calculus.
> Because what a defendant I think would have to show
> to the Court is that, first, there was an intention
> to violate the fourth amendment (sic) and, secondly,
> that the intentional violation was done with a view
> and a purpose of increasing a sentence.

Tr. II at 61. The Court went on to find that "there is no evidence
here that the agents intentionally violated the Defendant's fourth
amendment (sic) rights.... [or] that the actions taken by the
police in this case were designed in order to bring in the weapon
so as to enhance the defendant's sentence in this case." Id. at
65.

Although the exclusionary rule's reach in the sentencing con-
text has not been definitively defined by any courts of appeals,
those that have considered the issue generally agree that "in most
circumstances, the Fourth Amendment exclusionary rule does not bar

the introduction of suppressed evidence during sentencing proceed-
ings." United States v. Acosta, 305 F.3d at 84 (1st Cir. 2002)
(emphasis added).  Where the river of opinion splits, however,
involves the question of under what circumstances should the ex-
clusionary rule apply at sentencing?  In Acosta, the Court pointed
out that "[n]ine...circuits have added or left open the possibility
that the exclusionary rule will still apply if there is an indic-
ation that the police violated the defendant's Fourth Amendment
rights with the intent to secure an increased sentence."  Id. at
85 (citations omitted).  Some of these circuits, however, are of
the opinion that the exclusionary rule would only apply if the
violation was intentional, while others stress confinement of
the intent requirement to the seizing evidence for the purpose securing
a higher sentence.  See United States v. Ryan, 236 F.3d 1268, 1271
-72 (10th Cir. 2001) (intentional violation); United States v.
Kim, 25 F.3d 1426, 1435 n.8 (9th Cir. 1994) (same).  But c.f.,
United States v. Montoya-Ortiz, 7 F.3d 1171, 1181 & n.10 (5th Cir.
1993) (intent to increase sentence); United States v. Jenkins, 4
F.3d 1338, 1344-45 (6th Cir. 1993) (same); United States v. Tevada,
956 F.2d 1256, 1263 (2nd Cir. 1992) (same); United States v. Lynch,
934 F.2d 1226, 1236-37 & n.15 (11th Cir. 1991) (same); United
States v. McCrory, 930 F.2d 63, 69 (D.C. Cir. 1991) (same); United
States v. Torres, 926 F.2d 321, 325 (3rd Cir. 1991) (same).  In
reading these cases, it may seem like merely a question of semantics,
but where to properly ascribe the intent requirement has significant
ramifications in terms of the burden placed on the defendant.  It

21

is rarely possible for a defendant to show that the police inten-
tionally violated his Fourth Amendment rights, while showing that
the evidence was seized to intentionally increase his sentence is
a much easier hurdle to surmount.   Even the Acosta decision is
somewhat ambiguous on this point.   In one part of the Opinion
the Court states:  "...if there is an indication that the police
violated the Defendant's Fourt Amendment rights with the intent
to secure an increased sentence [,]" id. at 85, while another part
states: "We leave open the question of whether the exclusionary
rule would bar the use of evidence when police intentionally act
in violation of the Fourth Amendment in order to increase a de-
fendant's sentence." Id. at 86.   And still another part states:
"this is not a case where the officers acted with intent to enhance
Acosta's sentence."  Ibid. So, what is the correct standard?

It is axiomatic that the exclusionary rule was developed to
deter official misconduct.  United States v. Calandra, 414 U.S.
338 (1974).  The idea was that if critical evidence possibly could
be suppressed at trial, then the police would be more vigilant in
ensuring that their conduct fell within the parameters of the
Constitution.  This was a strong incentive.  But the incentive
vanishes when the same evidence that would be suppressed at trial
is used to enhance a defendant's sentence by a quantum identical
to that which the defendant would have received had the evidence,
in this case a gun, been embodied in a subsstantive count and the
defendant been convicted.

Granted, there should not be a blanket rule excluding suppressed
evidence from considering under the Sentencing Guidelines.  Exclusion
should be the exception to the rule.

But at the same time, a defendant should not be saddled with an impossible burden when arguing against the inclusion at sentencing of illegally seized evidence. Excluding evidence obtained in violation of the Fourth Amendment, and which was seized with the intention of increasing defendant's sentence, would serve as a strong incentive for the police to make sure they were operating within the confines of the law and would establish a burden, which, while not easy to overcome. would not be impossible to surmount.

c. **Even if the District Court correctly interpreted _Acosta_, the evidence shows that the agents intentionally violated the Fourth Amendment.**

The search and seizure in question was not fully consummated until the alleged gun was removed from the building in which Guzman resided. The lead investigator, DEA Special Agent Drouin, testified that while he was at Guzman's residence conducting the search he had received a telephone call from the prosecutor informing him that the basement area of the building was not included in the search warrant. Tr. II at 28-29. The basement, however, had already been searched, and the gun had purportedly been brought upstairs. Ibid.

At this point, Agent Drouin <u>could</u> have simply replaced the gun where it had been found, thus eliminating any Fourth Amendment violation (there was, after all, no evidence that Guzman could not legally possess a firearm). Instead, however, although knowing for certain that seizing the gun could only be accomplished in violation of the Fourth Amendment, Agent Drouin Intentionally caused the gun to be removed from the premises with the view and

23

purpose that the firearm would be used to increase Guzman's sentence.

The following exchange took place at the October sentencing hearing between defense counsel and Agent Drouin:

> Q (by defense counsel): And you're aware of the various enhancements and/or penalties that are given under the sentencing guidelines for possession of drugs when there is conduct -- excuse me, possession of guns when there is conduct involving drugs?
>
> A: Yes, Sir.

Tr. II at 26.  This being the case, there is no other reason why Agent Drouin would seize a gun which he had no knowledge Guzman couldn't legally possess, other than to increase Guzman's sentence.

### d. The agents acted with a view and a purpose of increasing Guzman's sentence.

As stated above, the evidence is clear that the agents acted intentionally to increase Guzman's sentence.  No further elaboration is necessary.

In light of the above, appellate counsel's failure to raise these issues in the Court of Appeal's constitutes deficient performance, especially where there is no clear precedent to contravene Guzman's position.  Moreover, with all things considered, there is a reasonable probability that Guzman's appeal would have been successful on this issue.

### GROUND SEVEN

**Appellate Counsel Was Constitutionally Ineffective For Not Following-Up On Trial Counsel's Timely Objection To DEA Agent Drouin's Hearsay Testimony And Claiming That The District Court Abused Its Discretion In Allowing Said Testimony Into The Sentencing Record**

During sentencing, DEA Agent Drouin testified extensively about alleged drug purchases, shootings and weapons involving Guzman.  Mr. Drouin's well knitted testimony was grounded on uncorroborated hearsay testimony from identified and available confidential source John Corsatta; and identified and available Agent Cruz.  Tr. II at pp. 6-47.

Trial counsel vehemently objected to Agent Drouin's speaking for the above available witnesses.  Tr. II at p. 10.

Trial counsel insisted that Guzman's right of confrontation to cross was being violated.  Id. Even the government realized this and told the Court that if the Court so rules, the government will make available the witnesses.  Id. at p. 11.  Trial counsel pointed out that he was not responsible for helping the government prepare its case against his client.  Id.  The Court would not allow trial counsel to further speak on the hearsay matter (Id. at p. 12) and ruled that the known and available confidential sources did not have to be present (Id.) because hearsay is admissible (Id.). Trial counsel requested a continuing objection.  Id.

In the case sub judice, there is no doubt that the Due Process Clause is implicated at sentencing, and that a defendant has a right to question procedure that lead up to the imposition of sentence.  See Gardner v. Florida, 430 U.S. 349, 358 (1977).  And, sentences imposed on the basis of material misinformation may violate due process in some circumstances.  Roberts v. United States, 445 U.S. 552, 556 (1980); United States v. Tucker, 404 U.S. 443,

447 (1972) (defendant has a due process right not to be sentenced
on the basis of materially incorrect information). However, there
must be some <u>minimal</u> indication of reliability accompanying a
hearsay statement, other than mere allegation, before it may be
relied upon in sentencing. <u>United States v. Beaulieu</u>, 893 F.2d
1177, 1181 (10th Cir.), <u>cert</u>. denied, ____ U.S. ____, 110 S.Ct.
3302, 111 L.Ed.2d 811 (1990), <u>see also</u> U.S.S.G. § 6A1.3, comment
(backg'd) (<u>reliable</u> hearsay may be considered). But no sixth
amendment right of confrontation applies at sentencing when the
district court considers evidence from sources that are unavail-
able for the defendant to cross-examine. <u>Beaulieu</u>, 893 F.2d at
1180-81.

Turning to the instant case, the record supports Guzman's
contention herein that nobody knows how long agent Drouin has
been an agent for the DEA. Nobody knows how much experience agent
Drouin has in investigating drug cases. Nobody knows if agent
Drouin had motive to distort or misrepresent the facts whether
intentionally or not intentionally. The record is devoid of any
finding(s) of reliability surrounding the truthfulness of the hearsay
testimony. And, it appears that the opposite of what <u>Beaulieu</u>
stands for applies here -- that the right of confrontation applies
at sentencing when the district court considers evidence from sources
that are available for the defendant to cross-examine. There appears
to be no First Circuit precedent on this claim.

Appellant counsel had a duty to address this non-frivolous
issue, but did not. Based on the above facts, the sentence must

be vacated and the case remanded for re-sentencing.

## CONCLUSION

For the foregoing reasons and authorities cited, Guzman respectfully request the following relief:

1. That counsel be appointed to file a supplemental brief;

2. That a full evidentiary hearing be granted;

3. That Guzman be re-sentenced within the terms of the plea agreement, and with no enhancement for the alleged gun; and

4. That Guzman's plea of guilty be vacated and a new trial ordered.

WHEREFORE, Guzman prays that this motion will be granted.


Respectfully submitted,


*Edgar Guzman*
Edgar Guzman
Reg. No. 05114-070
U.S. Penitentiary Allenwood
P.O. Box 3000
white Deer, PA 17887


Date: 6-9-2005


27

## DECLARATION OF EDGAR GUZMAN

I declare under penalty of perjury that the following is true and correct.  Executed on June 9, 2005.

Edgar Guzman

Edgar Guzman

Movant, pro se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Memorandum Of Law In Support Of Edgar Guzman's Motion To Vacate, Set Aside, Or Correct Sentence Pursuant To 28 U.S.C. § 2255 was given to prison authorities for mailing, postage prepaid, to Respondent at the below address:

Donald C. Lockhart
Assistant U.S. Attorney
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

on this 9th day of June, 2005

*Edgar Guzman*
Edgar Guzman

R. Matlack, Case Manager,
Authorized by the Act of July 7,
1955, as amended to administer
oaths ( 18 USC 4004).

USP Allenwood Case Manager
Authorized to Administer Oaths

June 9, 2005

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

EDGAR GUZMAN,                         :        CA 05-214ML

      Movant,              :        Crim. No. 01-00134T

    vs.                              :

UNITED STATES OF AMERICA,   :        **AFFIDAVIT OF EDGAR GUZMAN**

      Respondent.          :

_____        :

STATE OF PENNSYLVANIA )

COUNTY OF UNION       )   SS:

                    )

Edgar Guzman, being duly sworn, deposes and states under penalty of perjury:

1. I am the movant in the above captioned case, and, proceeding pro se.

2. After counsel advised me that my petition for writ of certiorari was filed with the United States Supreme Court, I followed-up with twenty-three (23) letters addressed to Derege Demissie, Esquire and William K. Suter, Clerk, United States Supreme Court. These letters covered a time span from January 16, 2003, to April 4, 2005. The contents of these letters simply asked Messrs. Demissie and Suter what the status of my writ of certiorari is. I never received a response letter from either of these gentlemen.

3. With the exception of the July 19, 2004 and April 19, 2005 letters received from Mr. Demissie (see Exhibit's A & B attached

**Exhibit One**

to my § 2255 motion), a check of the pentitentiary's mailroom records also supports that I received no legal mail answering my concerns during the above time-frame.

4. After receiving Mr. Demissie's April 19, 2005 letter on April 26, 2005, I immediately filed my § 2255 motion on May 11, 2005 and additionally asked the Court for another forty (40) days in which to file my supporting memorandum of law. The Court subsequently ordered respondent to Answer my § 2255, however, remained silent on my request for additional time to file my memorandum of law.

Further your affiant sayeth not.


*Edgar guzman*

Edgar Guzman
Reg. No. 05114-070, Unit 3B
U.S. Penitentiary Allenwood
P.O. Box 3000
White Deer, PA 17887


Dated: June 9, 2005


Sworn to before me this
9th day of June, 2005

R. Matlack, Case Manager,
Authorized by the Act of July 7,
1955, as amended to administer
oaths ( 18 USC 4004).

_____

USP Allenwood Case Manager
Authorized to Administer Oaths

2

Edgar Guzman
Reg. No. 05114-070
USP Allenwood
P.O. Box 3000
White Deer, PA. 17887
Unit 3B

January 28,2004

Honorable Clerk
Roxbury District Court
85 Warren Street
Roxbury, MA. 02119

RE: **Ramon Ortiz**
0002CR005132

Dear Honorable Clerk:

My name is Edgar Guzman aka Ramon Ortiz. I am currently incarcerated at the USP Allenwood, White Deer, PA.

This letter is in response to a warrant issued by your office in the above captioned case on October 11, 2000.

It is my belief that said warrant has been mistakenly lodged against me and appears as a detainer in my inmate case file.

The warrant states that on October 6, 2000 Ramon Ortiz did in fact commit burglary, assault, and other violations to an Abuse Prevention Order.

Although I did assume the name Ramon Ortiz as an alias, I am innocent of any of the crimes listed in your warrant. Actually at the time the crimes were committed, I was incarcerated and serving a three year sentence at Middleton Correctional Facility. Your warrant also states ███████████████ as my date of birth and ███████████ as my social security number. My date of birth is ████████████ and my social security number is ████████.

I am inclosing a copy of my inmate identification card with my photograph. I would also request that your office request a certified copy of my fingerprint card for you to compare with the prints you have on record of Ramon Ortiz. I believe that once you verify the above information I will be exonerated on the pending charges.

**Exhibit Two**

Your office can inquire with the Essex County Superior Court Clerk's Office concerning my sentence in DKT-# 9836CR002334 on July 31, 1998.

**Essex County Superior Court**
**Adult Probation Department**
**32 Federal Street**
**Salem, MA. 01970**

I would also request that once the verification is made that your office notify the Inmate Systems Manager at this institution to have the warrant and detainer letter lifted.

**ISM Angelini**
**USP Allenwood**
**P.O. Box 3500**
**White Deer, PA. 17887**

I thank you for your time and consideration in the above matter and hope to hear from you at your earliest convenience.

Respectfully submitted,

Edgar Guzman aka Ramon Ortiz
Reg. No. 05114-070

# CRIMINAL DOCKET

**DOCKET NO.** 0002    **5132**

**ATTORNEY NAME**

| | |
|---|---|
| **COURT DIVISION** Roxbury | ☐ INTERPRETER REQUIRED |

**DATE and JUDGE** | **DOCKET ENTRY**

☐ Attorney appointed (SJC R. 3:10)
☐ Atty denied and Deft Advised per 211D §2A
☐ Waiver of counsel found after colloquy

**NAME, ADDRESS AND ZIP CODE OF DEFENDANT**

ORTIZ, RAMON

**Terms of release set:**
☐ PR   ☐ Bail:
☐ Held (276 §58A)
☐ See back for special conditions

**Arraigned and advised:**
☐ Potential of bail revocation (276 §58)
☐ Right to bail review (276 §58)
☐ Right to drug exam (111E §10)

| | |
|---|---|
| **DATE OF OFFENSE(S)** 10/06/2000 | **PLACE OF OFFENSE(S)** ROXBURY |
| **COMPLAINANT** MARTIN, PAUL DET. | **POLICE DEPARTMENT (if applicable)** BOSTON PD AREA B-2 |
| **DATE OF COMPLAINT** 10/11/2000 | **RETURN DATE AND TIME** |

**Advised of right to jury trial:**
☐ Does not waive
☐ Waiver of jury trial found after colloquy

Advised of trial rights as pro se (Supp. R. 4)

Advised of right of appeal to Appeals Ct (R. 28)

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT |
|---|---|---|---|---|---|
| 1. 209A/7 ABUSE PREVENTION ORDER, VIOLATE c209A §7 | | | | | ☐ WAIVED |

**DISPOSITION DATE and JUDGE**

**SENTENCE OR OTHER DISPOSITION**
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation   ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm.   ☐ Request of Victim
  ☐ Request of Deft   ☐ Failure to prosecute   ☐ Other:
  ☐ Filed with Deft's consent   ☐ Nolle Prosequi   ☐ Decriminalized (277 §70C)

| DISPOSITION METHOD | FINDING |
|---|---|
| ☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning | ☐ Not Guilty ☐ Guilty ☐ Not Responsible ☐ Responsible |
| ☐ Bench Trial ☐ Jury Trial ☐ None of the Above | ☐ No Probable Cause ☐ Probable Cause |

**FINAL DISPOSITION** | **JUDGE** | **DATE**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT |
|---|---|---|---|---|---|
| 2. 266/14/E BURGLARY, UNARMED & ASSAULT c266 §14 | | | | | ☐ WAIVED |

**DISPOSITION DATE and JUDGE**

**SENTENCE OR OTHER DISPOSITION**
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation   ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm.   ☐ Request of Victim
  ☐ Request of Deft   ☐ Failure to prosecute   ☐ Other:
  ☐ Filed with Deft's consent   ☐ Nolle Prosequi   ☐ Decriminalized (277 §70C)

| DISPOSITION METHOD | FINDING |
|---|---|
| ☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning | ☐ Not Guilty ☐ Guilty ☐ Not Responsible ☐ Responsible |
| ☐ Bench Trial ☐ Jury Trial ☐ None of the Above | ☐ No Probable Cause ☐ Probable Cause |

**FINAL DISPOSITION** | **JUDGE** | **DATE**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT |
|---|---|---|---|---|---|
| 3. 265/15A/A A&B WITH DANGEROUS WEAPON c265 §15A | | | | | ☐ WAIVED |

**DISPOSITION DATE and JUDGE**

**SENTENCE OR OTHER DISPOSITION**
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation   ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm.   ☐ Request of Victim
  ☐ Request of Deft   ☐ Failure to prosecute   ☐ Other:
  ☐ Filed with Deft's consent   ☐ Nolle Prosequi   ☐ Decriminalized (277 §70C)

| DISPOSITION METHOD | FINDING |
|---|---|
| ☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning | ☐ Not Guilty ☐ Guilty ☐ Not Responsible ☐ Responsible |
| ☐ Bench Trial ☐ Jury Trial ☐ None of the Above | ☐ No Probable Cause ☐ Probable Cause |

**FINAL DISPOSITION** | **JUDGE** | **DATE**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT |
|---|---|---|---|---|---|
| 4. 268/13B/A WITNESS, INTIMIDATE c268 §13B | | | | | ☐ WAIVED |

**DISPOSITION DATE and JUDGE**

**SENTENCE OR OTHER DISPOSITION**
☐ Sufficient facts found but continued without guilty finding until:
☐ Probation   ☐ Pretrial Probation (276 §87) - until:
☐ To be dismissed upon payment of court costs/restitution
☐ Dismissed upon: ☐ Request of Comm.   ☐ Request of Victim
  ☐ Request of Deft   ☐ Failure to prosecute   ☐ Other:
  ☐ Filed with Deft's consent   ☐ Nolle Prosequi   ☐ Decriminalized (277 §70C)

| DISPOSITION METHOD | FINDING |
|---|---|
| ☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning | ☐ Not Guilty ☐ Guilty ☐ Not Responsible |
| ☐ Bench Trial ☐ Jury Trial ☐ None of the Above | ☐ No Probable Cause |

A TRUE COPY ATTEST

MILTON D. WRIGHT, JR.

**FINAL DISPOSITION** | **JUDGE** | **DATE**
☐ Dismissed on recommendation of Probation Dept.
☐ Probation terminated: defendant discharged

☐ ADDITIONAL COUNTS ATTACHED

| A TRUE COPY ATTEST: | X | CLERK-MAGISTRATE/ASST. CLERK | ON (DATE) | **COURT ADDRESS** Roxbury District Court 85 Warren Street Roxbury, MA 02119 |
|---|---|---|---|---|

Case 1:05-cv-00214-ML    Document 4    Filed 06/16/2005    Page 35 of 36

## SCHEDULING HISTORY

| D. | SCHEDULED DATE | SCHEDULED EVENT | RESULT | | JUDGE | TAPE NO. | START | STOP |
|---|---|---|---|---|---|---|---|---|
| . | | | ☐ Held | ☐ Cont'd | | | | |
| 2 | | | ☐ Held | ☐ Cont'd | | | | |
| 3 | | | ☐ Held | ☐ Cont'd | | | | |
| 4 | | | ■ Held | ☐ Cont'd | | | | |
| 5 | | | ☐ Held | ☐ Cont'd | | | | |
| 6 | | | ☐ Held | ☐ Cont'd | | | | |
| 7 | | | ☐ Held | ☐ Cont'd | | | | |
| 8 | | | ☐ Held | ☐ Cont'd | | | | |
| 9 | | | ☐ Held | ☐ Cont'd | | | | |
| 0 | | | ☐ Held | ☐ Cont'd | | | | |

RR=Arraignment  PT=Pretrial hearing  CE=Discovery compliance and jury election  T=Bench trial  J=Jury Trial  PC=Probable cause hearing  M=Motion hearing  SR=Status review
RP=Status review of payments  FA=First appearance in jury session  S=Sentencing  CW=Continuance-without-finding scheduled to terminate  P=Probation scheduled to terminate
TA=Defendant failed to appear and was defaulted  WAR=Warrant issued  WARD=Default warrant issued  WR=Warrant or default warrant recalled  PR=Probation revocation hearing

| ENTRY DATE | OTHER DOCKET ENTRIES |
|---|---|
| 10/11/00 | **WARRANT ISSUED** |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

## ADDITIONAL ASSESSMENTS IMPOSED OR WAIVED

| DATE IMPOSED and JUDGE | TYPE OF ASSESSMENT | AMOUNT | DUE DATES and COMMENTS | ✓WAIVED |
|---|---|---|---|---|
| | Legal Counsel Fee (211D §2A ¶2) | | | |
| | Legal Counsel Contribution (211D §2) | | | |
| | Court Costs (280 §6) | | | |
| | Drug Analysis Fee (280 §6B) | | | |
| | OUI §24D Fee (90 §24D ¶9) | | | |
| | OUI Head Injury Surfine (90 §24[1][a][1] ¶2) | | | |
| | Probation Supervision Fee (276 §87A) | | | |
| | Default Warrant Assessment Fee (276 §30 ¶2) | | | |
| | Default Warrant Removal Fee (276 §30 ¶1) | | | |
| | | | | |
| | | | | |

| Roxbury | NAME, ADDRESS AND ZIP CODE OF DEFENDANT | Roxbury District Court |
|---|---|---|

**Roxbury District Court**

ORTIZ, RAMON

TO ANY AUTHORIZED OFFICER:
REASON FOR WARRANT

Representation of prosecutor that defendant may not appear unless arrested.

Defendant failed to appear after being summoned to appear.

Defendant failed to appear after recognizing to appear.

Defendant failed to pay court ordered monies in the amount of $_____.

☐ Defendant failed to pay non-criminal motor vehicle fine in the amount of $_____.

☐ Defendant failed to appear for Probation Surrender Hearing

☐ Other:

| DATE OF OFFENSE | PLACE OF OFFENSE |
|---|---|
| 10/06/2000 | ROXBURY |

| COMPLAINANT | POLICE DEPARTMENT |
|---|---|
| MARTIN, PAUL  DET. | BOSTON PD AREA B-2 |

| DATE OF COMPLAINT | RETURN DATE AND TIME |
|---|---|
| 10/11/2000 | |

**COUNT-OFFENSE**

1 - 209A/7  ABUSE PREVENTION ORDER, VIOLATE c209A §7

on 10/06/2000 did fail to comply with a court order to refrain from abuse, to vacate the household, multiple family dwelling or workplace, to have no contact with the plaintiff or the plaintiff's minor child(ren), or to surrender any license to carry firearms and/or firearms identification cards which the defendant held, or to surrender all firearms, rifles, shotguns, machine guns and ammunition which the defendant then controlled, owned or possessed, issued under the provisions of G.L. c.208, §18§34B-§34C, G.L. c.209, §32, G.L. c.209A, §3-§5 or G.L. c.209C, §15 and §20, or a protection order issued by another jurisdiction, as defined in G.L. c.209A, §1, in violation of G.L. c.209A, §7 and/or §3B. (PENALTY: house of correction not more than 2 1/2 years; or not more than $5000; or both; court may order attendance at batterer treatment program; court may order payment of damages to victim.)

**COUNT-OFFENSE**

1 - 266/14/E  BURGLARY, UNARMED & ASSAULT c266 §14

on 10/06/2000 did in the night time break and enter the dwelling house of AWILDA PIZARRO with intent to commit a felony therein, and did make an actual assault upon AWILDA PIZARRO, a person lawfully therein, in violation of G.L. c.266, §14. (NO DISTRICT COURT FINAL JURISDICTION IN ADULT SESSION; must submit a DNA sample within 90 days of conviction pursuant to G.L. c.22E, §3.)

**COUNT-OFFENSE**

1 - 265/15A/A  A&B WITH DANGEROUS WEAPON  c265 §15A

on 10/06/2000 did, by means of a dangerous weapon, a SHOD FOOT, assault and beat AWILDA PIZARRO, in violation of G.L. c.265, §15A(b). (PENALTY: state prison not more than 10 years; or jail not more than 2½ years; or not more than $1000. District Court has final jurisdiction under G.L. c.218, § 26.)

**COUNT-OFFENSE**

1 - 268/13B/A  WITNESS, INTIMIDATE c268 §13B

on 10/06/2000 did, directly or indirectly, wilfully endeavor by means of a gift, offer or promise of something of value or by misrepresentation, intimidation, force or express or implied threats of force, to influence, impede, obstruct, delay or otherwise interfere with a witness in a stage of a trial, grand jury or other criminal proceeding, or with a person furnishing information to a criminal investigator relating to a violation of a criminal statute of this Commonwealth, in violation of G.L. c.268, §13B. (PENALTY: state prison not less than 2½ years, not more than 10 years; or house of correction not more than 2½ years; and not less than $1000, not more than $5000. District Court has final jurisdiction under G.L. c.218, §26.)

MILTON L WRIGHT, JR

THE COURT HAS ORDERED THAT A  ☑ WARRANT      ISSUE AGAINST THE ABOVE DEFENDANT
☐ DEFAULT WARRANT

Therefore you are hereby commanded to arrest the above named defendant and bring the defendant forthwith before this court to answer to the offense(s) listed above and to be dealt with according to law.

| | FIRST JUSTICE | DATE OF ISSUE | CLERK-MAGISTRATE/ASST. CLERK |
|---|---|---|---|
| WITNESS: | Wright, Milton L. | 10/11/2000 | |