IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EDGAR GUZMAN                    )
                               )
     vs.                       )        C.A. No. 05-214ML
                               )
UNITED STATES OF AMERICA       )

## GOVERNMENT'S OBJECTION TO PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

Comes now the United States of America, by and through its attorneys, Robert Clark

Corrente, United States Attorney, and Stephanie S. Browne, Assistant U. S. Attorney, and

objects to petitioner's Motion To Vacate, Set Aside Or Correct Sentence Pursuant To 28 U.S.C.

§ 2255 for those reasons stated in the accompanying memorandum.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorneys,

Robert Clark Corrente
United States Attorney

Stephanie S. Browne
Assistant U.S. Attorney

1

CERTIFICATION


I hereby certify that on the 23rd day of June, 2005, I mailed a true copy of the Within Government's Objection To  Petitioner's Motion To Vacate, Set Aside Or Correct Sentence Pursuant To 28 U.S.C. § 2255, ordinary mail and postage prepaid, to:


Edgar Guzman
Reg. No. 05114-070
Unit 3B
U.S. Penitentiary Allenwood
P.O. Box 3000
White Deer, PA 17887


*Paula Hasey*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


EDGAR GUZMAN                          )
                                     )
        vs.                          )        C.A. No. 05-214ML
                                     )
UNITED STATES OF AMERICA             )


**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS
OBJECTION TO PETITIONER'S MOTION TO VACATE, SET
ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**


Introduction

        Petitioner Edgar Guzman (Guzman) files this motion pursuant to 28 U.S.C. § 2255. In

reliance upon Apprendi v. New Jersey, 530 U.S. 466 (2000) Guzman argues that his sentence

violates the Sixth Amendment because the sentence was based, in part, upon possession of a

firearm which he never admitted and of which no jury found him guilty. He further seems to

argue, reciting a laundry list of items which need not be repeated here, that both his trial and

appellate counsel rendered ineffective assistance. He further contends that the holding in Blakely

v. Washington, 124 S.Ct. 2531 (2004) "merely require[d] [the Court] to apply the rule [they]

expressed in Apprendi."


Facts and Travel

        On January 23, 2002, a federal grand jury in the District of Rhode Island returned a two-

count indictment against Guzman. Count 1 charged that on November 27, 2001, he distributed

over 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Count 2

charged that on December 20, 2001, he possessed with intent to distribute over 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

In late October or early November 2001, Petitioner Guzman (whose true name is William Edgardo Mejias-Arias) offered to sell drugs to a DEA confidential source ("CS"). On November 27, 2001, Petitioner phoned the CS and said that two kilograms of cocaine had just come in from New York and that he had one kilogram left to sell. Guzman quoted a price of $925 per ounce. The CS phoned Guzman that afternoon and ordered two ounces of cocaine. Later the same day, the CS purchased 50.9 grams of crack cocaine from Petitioner at a Providence liquor store.

In mid-December 2001, Guzman and the CS began negotiating a much larger proposed cocaine deal. On December 19, 2001, while those negotiations were still in progress, Guzman and the CS met at Guzman's Pawtucket apartment. There, the CS saw Petitioner trying to arrange a separate drug deal. Guzman boasted that he had been involved in several shootings. He also told the CS that he possessed certain guns, including a sawed-off shotgun that he kept in his bedroom and a gun "downstairs." Guzman offered to sell the CS the shotgun. Petitioner then said that he would give the CS the shotgun, apparently as part of the drug deal they were then negotiating.

On December 20, 2001, Guzman phoned the CS from his Pawtucket apartment and said that he had 250 grams of crack cocaine to sell. Agents arrested Guzman outside the apartment later that day. At the time, Petitioner possessed a key to the apartment and a photo id with the apartment's address. Pursuant to a search warrant, agents searched the apartment and found a plate on the dining room table which contained 278.7 grams of crack cocaine; a nearby knife with

2

cocaine residue on it; a coffeepot with cocaine residue on it; acetone (used in processing crack); a digital scale; and several documents pertaining to Petitioner. In a basement storage locker, agents found a sawed-off shotgun and an id bearing Guzman's photo.

On February 26, 2002, Guzman pled guilty to both charges pursuant to a written plea agreement.

The Probation Department calculated his sentence as follows. Because the cocaine base totaled 329.6 grams, Guzman's base offense level was 34 under USSG § 2D1.1(c)(3). Guzman's possession of the sawed-off shotgun merited a two-level increase under USSG § 2D1.1(b)(1). A two-level obstruction-of-justice enhancement was warranted because Petitioner had lied to the court and the Probation Department about his name; date of birth; place of birth; citizenship; and social security number. There were no extraordinary circumstances warranting an acceptance-of-responsibility reduction. The total offense level was 38. Guzman's seven criminal history points placed him in Criminal History Category IV. The applicable sentencing range was 324 to 405 months of imprisonment.

The Probation Department stood by these recommendations after receiving a letter in which, initially, defense counsel (a) made cursory objections to the two enhancements and (b) sought an acceptance-of-responsibility reduction.

At a September 13, 2002 hearing, the court continued sentencing to October 25, 2002.

At the outset of the October 25 sentencing hearing, defense counsel conceded that Petitioner was William Edgardo Mejia-Arias, born October 29, 1976 in the Dominican Republic

3

and a citizen of that country.[1]  Toward the end of the hearing, counsel retreated from his earlier

letter to the Probation Department and stated: "So there is no argument I can make to the Court

out of the First Circuit that my client has a right to have his acceptance of responsibility or that he

does not have the right to be enhanced by obstruction of justice."  The court accepted both

concessions.  The government then noted that by using a false identity, Petitioner had initially

been able to conceal his substantial criminal history.  Defense counsel then reiterated the

concessions: "He did obstruct justice.  I have no basis in fact or in law to dispute that.  And based

on the decisions of the Circuit, as I said before, the Circuit has held and other Circuits have held

that that greatly influences his acceptance of responsibility, and we don't meet the extraordinary

circumstances to fit within that."  In his own allocution, Guzman addressed the court and noted

that one reason why he had lied about his identity was that "the fellow who sold me the [false]

documents who was also in jail with me told me that those papers were good, that they would

never find out what my true name was."

    Guzman did object to the proposed gun enhancement.  The primary defense argument

against the enhancement was that the sawed-off shotgun was illegally seized in violation of the

Fourth Amendment.  In support of the enhancement, the government called DEA Agent Jean

Drouin as a witness.  The court ultimately ruled that the enhancement was warranted.

---

[1]    Earlier, defendant had claimed to be a United States citizen
named Jesus Garcia, born ▮▮▮▮▮▮▮ 8 in Puerto Rico, with
social security number ▮▮▮▮▮▮▮.  (PSR at 3-4.)  Next he
claimed that he was actually Edgar Guzman-Rosario, born ▮▮▮▮▮▮▮.
at the plea hearing.  (2/26/02 Transcript at 5-6,12.)  After the
plea hearing but before sentencing, defendant switched gears yet
again and claimed that he was Ramon Ortiz, born ▮▮▮▮▮▮▮ in
Puerto Rico, with social security number ▮▮▮▮▮▮▮.  (PSR at 4.)

4

Adhering to a promise it made in the plea agreement, the government recommended the low end of the applicable guideline range. The court accepted that recommendation and sentenced defendant to 324 months in prison.

Guzman appealed to the First Circuit Court of Appeals raising issues that the district court clearly erred in imposing a two-level gun enhancement under USSG § 2D1.1(b)(1); that the two-level obstruction-of-justice enhancement under USSG § 3C1.1 was improper; that the denial of an acceptance-of-responsibility reduction under USSG § 3E1.1 was improper; and that the district court plainly erred in failing <u>sua sponte</u> to find that the government breached the plea agreement. The Court of Appeals rejected these arguments and affirmed the conviction on September 26, 2003 with mandate having issued on October 17, 2003. Guzman filed a writ of certiorari which was denied on February 26, 2004. Guzman has not filed a previous 28 U.S.C. § 2255 motion.

<u>Argument - The Sixth Amendment Violation</u>

In <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), the Court held that the Sixth Amendment, as construed in <u>Blakely</u>, applies to the Sentencing Guidelines. The Court reaffirmed the defendant's right to have the jury find the existence of any fact, except a prior conviction, that the law makes essential to a defendant's punishment. The Court noted that the mandatory nature of the guidelines combined with judicial fact-finding implicated the Sixth Amendment. The Court concluded that the guidelines are only advisory in nature.

The holding of <u>Booker</u> derives from the holdings in <u>Blakely</u> and <u>Apprendi</u>. The holdings of <u>Blakely</u> and <u>Apprendi</u> were new constitutional rules of criminal procedure. Under <u>Teague v.</u>

<u>Lane</u>, 489 U.S. 288 (1989), they are not retroactively applicable to cases that became final before those decisions were announced. <u>See</u> <u>Schriro v. Summerlin</u>, 124 S. Ct. 2519, 2524-26 (2004) (<u>Teague</u> bars retroactive application of <u>Apprendi</u>-based death penalty decision of Supreme Court in <u>Ring v. Arizona</u>, 536 U.S. 584 (2002)); <u>Sepulveda v. United States</u>, 330 F.3d 55, 59-63 (1st Cir. 2003) (<u>Apprendi</u> is not retroactively applicable under <u>Teague</u>); <u>Orchard v. United States</u>, 332 F. Supp.2d 275, 277 (D. Me. 2004) (holding that <u>Blakely</u> is not retroactively applicable under <u>Teague</u> and collecting cases on point); <u>United States v. Stancell</u>, 346 F. Supp.2d 204 (D.D.C. 2004). Guzman's indictment and trial complied with the holding of <u>Apprendi</u>. His conviction was final before both <u>Blakely</u> and <u>Booker</u> were decided. <u>Booker</u> is itself a new constitutional rule of criminal procedure, and like <u>Blakely</u> and <u>Apprendi</u>, should not be applied retroactively. <u>See</u> <u>Varela v. United States</u>, __F.3d__, 2005 WL 367095 (11th Cir., decided 2/17/2005) (Booker does not apply retroactively to cases on collateral review); <u>United States v. McReynolds</u>, 397 F.3d 479 (7th Cir. 2005) (<u>Booker</u> does not apply to criminal cases that became final before January 12, 2005).

<u>Guzman's Ineffective Assistance Of Counsel Argument Is Time-Barred For Failure To Comply With The Period Of Limitations</u>

Section 2255 imposes a one-year limitations period. In pertinent part, the statute states:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of -
(1) the date upon which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme

Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255.

The one-year period of limitations bars Guzman from relief. First, the mandate on the denial of Guzman's appeal was issued on October 17, 2003. The denial of his writ of certiorari was denied on February 26, 2004 and thus his one-year period commenced on that date. The instant petition was not filed until May 16, 2005[2], at least one year and two months after Guzman's conviction became final. Second, Guzman does not allege any governmental action which prevented him from making his motion earlier. He does claim equitable tolling should permit him to file this petition late because he claims not to have received word from his appellate counsel as to the exact date his writ for certiorari had been denied until April 26, 2005. However, according to his petition, he received word the writ had been denied by the Supreme Court in a letter dated July 19, 2004. Had he filed his petition promptly after receipt of that notice from appellate counsel, he would have filed within the time allotted. There is no basis for equitable tolling when "the claimant failed to exercise due diligence in preserving his legal rights." Trenkler v. United States, 268 F.3d 16, 25 (2001). Equitable tolling has been applied in the context of § 2255 petitions sparingly. Id. Third, Guzman does not allege any new facts supporting his claim which, through the exercise of due diligence, could not have been discovered earlier. Finally, as noted above, Booker, Blakely and Apprendi have not been applied retroactively to matters on collateral review.

_____

[2] Although the Petition is dated June 16, 2005, it appears that the original was filed on or about May 16, 2005 and that Guzman filed a subsequent Petition in error based upon a misunderstanding of the court's order to the United States to file a response by June 15, 2005. The government had not been sent that order.

7

Conclusion

For those reasons set forth herein, the petition should be denied and Judgment entered for

the United States.

Respectfully submitted,

Robert Clark Corrente
United States Attorney

Stephanie S. Browne
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of June 2005, I served a copy of the within
Government's Memorandum In Support of Its Objection To Petitioner's Motion To Vacate, Set
Aside, Or Correct Sentence Pursuant To 28 U.S.C. § 2255, by ordinary mail and postage prepaid,
to:

Edgar Guzman
Reg. No. 05114-070
Unit 3B
U.S. Penitentiary Allenwood
P.O. Box 3000
White Deer, PA 17887

8