UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EDGAR GUZMAN :
:
vs. : C.A. No. 05-214-ML
:
UNITED STATES OF AMERICA :

**MEMORANDUM AND ORDER**

Mary M. Lisi, Chief United States District Judge

Edgar Guzman[1] has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, that motion is denied.

BACKGROUND AND TRAVEL

On December 20, 2001 several agents from the Drug and Enforcement Agency ("DEA"), along with members of the Providence Police Department, arrested Edgar Guzman outside his apartment located in Pawtucket, Rhode Island. The arrest followed two months of investigation by the DEA, using a confidential source ("CS") to make drug purchases from Guzman. In the course of that investigation, Guzman sold 50.9 grams of cocaine base to the CS. During that deal, Guzman boasted of having several guns, including a sawed-off shotgun; he further stated that one of the guns was located in the basement of the apartment building where he lived. Guzman offered to sell the shotgun to the CS.

On the day of his arrest, Guzman had agreed to sell the CS an additional 250 grams of cocaine base. Pursuant to a search warrant, the police entered Guzman's apartment and found 278.7 grams of cocaine base. Mindful of Guzman's prior statements concerning his firearms,

---

[1] As noted infra, the movant's true name is William Edgardo Mejia-Arias, not Edgar Guzman. However, for convenience and because his conviction and appeal were under the name of Edgar Guzman, the Court refers to him under that name for purposes of this Memorandum and Order.

and mistakenly believing the search warrant included the basement, the DEA agent in charge, Jean Drouin, authorized agents to search it. The basement search yielded a sawed-off shotgun in Guzman's storage bin, along with an ID card bearing one of several aliases used by Guzman. After the shotgun had been seized and while the search was still progressing, Drouin learned that the basement area was not included in the search warrant.[2] At that point, the firearm was placed in the custody of the ATF.

Guzman subsequently pled guilty to distributing over 50 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and to possession with intent to distribute over 50 grams of cocaine base pursuant to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). In the written plea agreement which accompanied his plea, the Government conditionally promised to recommend a three-point reduction for acceptance-of-responsibility, and Guzman agreed not to engage in conduct that obstructed justice. The plea agreement provided that if he did so, the Government would be relieved of its obligations thereunder.

The initial presentence report prepared by the U.S. Probation Office calculated Guzman's base offense level at 34, based on 329.6 grams, the total amount of cocaine base involved in the two transactions. See United States Sentencing Guidelines § 2D1.1(c)(3). The base offense level was increased by two points for possession of the sawed-off shotgun. After preparing the initial presentence report, the Probation Office learned that Guzman's true identity was William Edgardo Mejia-Arias and that he had previously used, and had been convicted of prior offenses under, several aliases, including Edgar Guzman, Edgar Uceta, Ramon Ortiz, and Jesus Allen Garcia. In view of Guzman's dishonesty to both the Court and U.S. Probation officers regarding his identification and personal information, including citizenship and social security number, a

---

[2] Although the basement was mentioned in the affidavit supporting the warrant, the warrant itself did not include the basement as an area to be searched.

revised presentence report ("PSR") was prepared. The revised PSR added another two points for obstruction of justice and recommended no reduction for acceptance of responsibility. Based on a total offense level of 38 and a Criminal History level IV, the applicable sentencing range was 324 to 405 months of imprisonment.

Guzman's trial counsel, David A. Schechter, submitted several written objections to the revised PRS, including objections to the enhancement for obstruction of justice, the denial of acceptance-of-responsibility reduction and the two-point enhancement for the firearm.

At the sentencing hearing on October 25, 2002[3] defense counsel waived the objections pertaining to Guzman's use of aliases (see Transcript of Sentencing Hearing conducted on October25, 2002 ["Sent Tr."] at 4, 52, 66-67), and pressed only the objection to the firearm enhancement. Agent Drouin testified as to facts underlying that enhancement and described the circumstances incident to the seizure of the shotgun during the search. On cross-examination, Attorney Schechter questioned Drouin about the lack of any photographs taken of the firearm, seeking to raise doubt as to whether the firearm was actually at the premises on the day of the search or whether the police had planted it. Counsel also argued that the Court should not consider the firearm in sentencing because the police had intentionally violated Guzman's Fourth Amendment rights in seizing it for the purpose of enhancing the sentence. After hearing and argument, this Court determined that the firearm enhancement was warranted and pursuant to the Government's recommendation, sentenced Guzman to 324 months imprisonment, the low end of the applicable Guideline range.

Guzman appealed to the First Circuit, represented by new counsel, Derege Demissie. He

---

[3] The sentencing hearing was rescheduled from an earlier date to permit defense counsel to review the revised PSR and submit any additional objections. On that earlier date, the Court also denied Guzman's request for new counsel to represent him. (See Transcript of Hearing conducted on September 13, 2002 passim.)

challenged the sentencing enhancements for possession of the shotgun and obstruction of justice and the denial of a reduction for acceptance of responsibility reduction and argued that this Court erred in failing to find that the Government breached the plea agreement. The Court of Appeals summarily rejected these arguments and affirmed the sentence and conviction on September 26, 2003. United States v. Guzman, Judgment, No. 02-2433 (1st Cir. September 26, 2003)(unpublished). Guzman's petition for writ of certiorari to the U.S. Supreme Court was denied on February 23, 2004. Guzman v. United States, 540 U.S. 1201 (2004).

In July 2004 Guzman wrote to his appellate counsel, inquiring as to the status of his petition for writ of certiorari. A letter from appellate counsel dated July 19, 2004 advised him that certiorari had been denied but did not provide the date of denial. (See Motion To Vacate, Exh. A.) Nine months later appellate counsel sent Guzman a copy of the denial of the writ for certiorari containing the date of denial. (See cover letter dated April 19, 2005, Motion To Vacate, Exh. B.) On May 11, 2005, Guzman filed the instant motion to vacate.[4]

In his § 2255 motion and supporting papers, Guzman claims that his sentence was unlawfully enhanced by facts not found by a jury or admitted by him, in violation of his Sixth Amendments rights. He also asserts ineffective assistance on the part of both trial counsel and appellate counsel. Specifically, he claims that his trial counsel (1) failed to object to the calculation of Guzman's criminal history, (2) failed to investigate the existence of the firearm on which his sentence enhancement was based, and (3) improperly conceded the obstruction of justice enhancement and the corresponding denial of acceptance-of-responsibility reduction; and

---

[4] The motion to vacate was actually received by this Court on May 16, 2005. However, under the mailbox rule, see Morales-Rivera v. United States. 184 F.3d 109, 110 (1st Cir. 1999), the motion will be considered filed as of the date it was signed. A Memorandum of Law in Support of Edgar Guzman's Motion To Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 ["Pet. Memo"] was subsequently filed by Guzman on June16, 2005.

that his appellate counsel failed to challenge on appeal this Court's consideration of (1) the shotgun, and (2) hearsay testimony at the sentencing hearing. Guzman further contends that this Court should apply the principles of equitable tolling to find that his motion to vacate was timely filed.

The Government has filed an Objection to the motion to vacate, and Guzman has filed a reply. The matter is ready for decision.[5]

ANALYSIS

I. Timeliness of Motion To Vacate

As a threshold matter, this Court first addresses the timeliness of Guzman's motion to vacate. There is a one-year limitations period for a motion to vacate sentence filed under § 2255. This one-year period of limitations runs from the latest of –

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such government action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have discovered through the exercise of due diligence.

28 U.S.C. § 2255, ¶ 6.

Where a defendant appeals to the U.S. Supreme Court, his conviction becomes final when

---

5 Guzman requests an evidentiary hearing on his claims. However, no hearing is required in connection with any issues raised by his motion to vacate, because, as discussed infra, the files and records of this case conclusively establish that the claims in the motion to vacate are without merit. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.") (internal quotations omitted). See also Panzardi-Alverez v. United States, 879 F.2d 975, 985 n.8 (1st Cir. 1978) (no hearing is required where the district judge is thoroughly familiar with the case).

certiorari is denied. In re Smith, 436 F.3d 9, 10 (1st Cir. 2005).

In the instant case, Guzman does not dispute that his motion to vacate was filed more than one year after his conviction became final, see § 2255, ¶ 6(1), nor does he seek to invoke the one-year limitations period under 28 U.S.C. § 2255, ¶¶ 6(2) - 6(4). Rather, Guzman asserts that the one-year limitations period should be equitably tolled – so that his motion to vacate can be deemed timely. (See Motion To Vacate at ¶ 18; Pet. Memo at 5-7.)

Under the Doctrine of Equitable Tolling "a statute of limitations – unless its time limit is 'jurisdictional' – may be extended for equitable reasons not acknowledged in the statute creating the limitations period." David v. Hall, 318 F.3d 343, 345-346 (1st Cir. 2003). The First Circuit has, without expressly accepting the doctrine in the postconviction context, emphasized that the equitable tolling doctrine is invoked only in rare and exceptional cases where "extraordinary circumstances beyond the claimant's control prevented timely filing, or the claimant was materially misled into missing the deadline." Trenkler v. United States, 268 F.3d 16, 25 (1st Cir. 2001) (quoting Fradella v. Petricca, 183 F.3d 17, 21 (1st Cir. 1999) [citations omitted]). See Donovan v. Maine, 276 F.3d 87, 93 (1st Cir. 2002)(same). It is well settled that "[e]quitable tolling is not warranted where the claimant simply "failed to exercise due diligence in preserving his legal rights." Trenkler, 268 F.3d at 25 (quoting Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453 (1990)).

"The party seeking equitable tolling bears the burden of establishing the basis for it." Delaney v. Matesanz, 264 F.3d 7, 14 (1st Cir. 2001) (habeas petitioner failed to demonstrate that he was misled "or lulled . . . into a false belief that he had more allotted time to file"). Moreover, ignorance of the law or lack of diligence in pursuing one's claim are not grounds for equitable tolling. Id. at 15.

Here, Guzman claims that his appellate attorney's July19, 2004 letter misled him and lulled him into a false sense of security as to the date his petition for writ of certiorari was denied by the Supreme Court. (See Motion to Vacate, Ground One at 16.) His claim fails because he does not demonstrate circumstances that lulled or materially misled him so as to warrant equitable tolling. The July 19, 2004 letter in and of itself could not have reasonably "misled" or "lulled" Guzman into a false belief that he had almost a year to file his motion to vacate, as that letter merely sets forth that Guzman's petition for certiorari had been denied, without providing a date of the denial or any deadline for filing a § 2255 motion.

In an attempt to show diligence, Guzman asserts that after his petition for writ of certiorari was filed with the United States Supreme Court, he "followed up with twenty-three (23) letters" addressed to either his appellate counsel or the clerk of the United States Supreme Court, requesting information as to the status of his petition for writ of certiorari, that these letters were written during the period from "January 16, 2003, [sic] to April 4, 2005," and that he received no response other than the July 19, 2004 and April 19, 2005 letters. (See Affidavit of Edgar Guzman, attached to Petit. Memo ["Guzman Aff."] at ¶¶ 2-3).

Putting aside the questionable beginning date Guzman posits for his claimed letter-writing period[6] and accepting his averments as true, it is nonetheless questionable whether he exercised the requisite due diligence required. See Trenkler, 268 F.3d at 25. Even assuming Guzman reasonably believed that his petition for writ of certiorari was denied on or near the date of appellate counsel's July 19, 2004 letter, he makes no showing of any action he took with respect to filing a § 2255 motion in the following seven months leading up to his receipt of counsel's April 15, 2005 letter. Nothing outside of his control prevented Guzman from filing his

---

[6] The asserted date of January 16, 2003 predates by more than eight months the First Circuit's summary affirmance of his appeal on September 16, 2003.

motion to vacate promptly upon receipt of the first letter, which constituted constructive notice of the denial of certiorari some seven months before the § 2255 limitations period ended. See Plowden v. Romine, 78 F.Supp.2d 115, 119 (E.D.N.Y. 1999) (no equitable tolling where petitioner did not file timely habeas petition when notice was given two weeks before one-year period ended).

Moreover, Guzman points to no other extraordinary circumstance that would entitle him to equitable tolling in this matter. He does not point to any circumstance which prevented him from ascertaining the date that certiorari was denied and the deadline for filing any motion to vacate under § 2255. Thus, his claim constitutes "what is at best a garden-variety claim of excusable neglect." Trenkler, 268 F.3d at 27 (quoting Irwin, 498 U.S. at 97, 111 S.Ct. 453).

This Court acknowledges that had the April 19, 2005 letter from appellate counsel constituted the first notice to Guzman of the Supreme Court's denial of certiorari, the result might be different. Compare Brandon v. United States, 89 F.Supp.2d 731, 732-4 (E.D.Va. 2000) (equitable tolling awarded where appellate counsel gave notice on September 10, 1997 of May 13, 1996 denial of certiorari) and Baskin v. United States, 998 F.Supp. 188, 189 (D.Conn. 1998) (petitioner received first notice 13 months after denial of certiorari). However, it was not his first notice. Moreover, the dubious nature of the claims asserted in the motion to vacate, as discussed infra, adds a further consideration against equitable tolling in these circumstances. See Lattimore v. Dubois, 311 F.3d 46, 55 (1st Cir. 2002) (equitable tolling unavailable to resuscitate claim lacking in merit).

For these reasons, Guzman's claim for equitable tolling fails. Consequently, his motion to vacate is untimely pursuant to 28 U.S.C. § 2255, ¶ 6 and must be dismissed.

II. Other Claims

Even if equitable tolling could be invoked and Guzman's motion to vacate is deemed timely, the claims he asserts are all without merit, as discussed below.

A. Blakely Claim

Guzman claims that the respective two-point enhancements assessed for possession of a weapon and for obstruction of justice were improperly based on facts not found by a jury or admitted by him. He contends that under Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), the Sixth Amendment requires that sentencing enhancements be based on facts found by a jury or admitted by a defendant and that this decision applies retroactively to his sentence. (See Motion to Vacate, Ground Four; Pet. Memo at 8-12.)

As a threshold matter, the Court notes that Guzman, through his counsel, waived his objection to the obstruction-of-justice enhancement at the sentencing hearing (see Sent. Tr. at 66-67) and thus cannot now raise it here. Moreover, both of these enhancements were upheld by the Court of Appeals on direct appeal. See Guzman, No. 02-2433 at *1. Having raised these matters on appeal, Guzman is precluded from re-asserting any of the foregoing claims in this proceeding. It has long been established that claims raised and decided on direct appeal from a criminal conviction may not be re-asserted in a § 2255 proceeding. See Singleton v. United States, 26 F.3d 233, 240 (1st Cir. 1994) ("issues disposed of in any prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion"), quoting Dirring v. United States, 370 F.2d 862, 864 (1st Cir. 1967); Argencourt: v. United States, 78 F.3d 14,16 n.1 (1st Cir. 1996).

Even if these claims were to be addressed, they fail, as the pertinent Supreme Court law on which Guzman relies does not apply to his sentence. Blakely has been preempted by Booker v. United States, 543 U.S. 220, 125 S.Ct. 738 (2005). Booker applied the holding in Blakely to

the Federal Sentencing Guidelines and reaffirmed that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum penalty authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 543 U.S. at 244, 125 S.Ct. at 756. Thus, as noted by the First Circuit, "Blakely claims are now viewed through the lens of [Booker]." Cirilo-Munoz v. United States, 404 F.3d 527, 532 (1st Cir. 2005).

However, the First Circuit has noted, as have other circuits, that Booker is not retroactive to convictions that were final when that case was decided. See Cirilo-Munoz, 404 F.3d at 533 (§2255 petitions are unavailable to advance Booker claims in the absence of a Supreme Court decision rendering Booker retroactive to cases on collateral review). See also United States v. Fraser, 407 F.3d 9, 11 (1st Cir. 2005) (same). Here, Guzman's conviction became final when his petition for writ of certiorari was denied by the Supreme Court on February 23, 2004, prior to the decisions in both Booker and Blakely, and thus neither decision applies to his sentence.

B. Ineffective Assistance Claims – Trial Counsel

Under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), a defendant who claims that he was deprived of his Sixth Amendment right of effective assistance of counsel bears the burden of satisfying two elements. First, the defendant must demonstrate that his counsel's performance "fell below an objective standard of reasonableness."Strickland, 466 U.S. at 687-88, 694 (1984). See Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002). Secondly, the defendant must show that there was "[a] reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Id. The defendant also bears the additional burden of identifying the specific acts or omissions constituting the allegedly deficient performance. Allegations or factual assertions that are fanciful, unsupported

or contradicted by the record will not suffice. Dure v. United States, 127 F. Supp. 2d 276, 279 (D.R.I. 2001)(citing Lema v. United States, 987 F.2d 48, 51-52 (1st Cir. 1993)).

In assessing whether counsel's performance was deficient, courts look to the "prevailing professional norms." Strickland, 466 U.S. at 688. This means that a defendant must show that counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 369 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970). In order to satisfy the prejudice element, a defendant must show that but for counsel's unreasonable acts, the outcome would have likely been different. See Cirilo-Munoz, 404 F.3d at 530.

Here, Guzman raises three claims of ineffective assistance on the part of his trial counsel, all of which are without merit.

1. Failure to Investigate Criminal History

Guzman first claims that his counsel was ineffective for failing to investigate and object to the inclusion of a prior proceeding in Roxbury District Court as part of his criminal history reported in the revised PRS, in order to show that it was not committed by him. Guzman argues that had this item not been counted, he would have had less than seven criminal history points, placing him in Criminal History Category III instead of IV. (See Motion to Vacate, Ground Two; Pet. Memo at 7-8.)

The short answer to this claim is that the proceeding in question, which involved a charge of violating a restraining order (see PSR at ¶ 35), did not result in a prior conviction and was not counted towards the assessment of Guzman's criminal history points in the revised PRS. The revised PRS clearly describes the sources of the seven Criminal History points assessed: five points for two drug convictions and one conviction for rape, with two points added because he

was on parole when he committed the instant offense, U.S.S.G. § 4A1.1(e). One additional point was added because the instant offense was committed within two years after his release from a previous incarceration, §4A1.1(e).[7] (See PSR at ¶¶ 29-32.) Because the Roxbury proceeding was not included in the calculation of Guzman's offense level, there was no possible prejudice to Guzman and thus no ineffective assistance.[8]

2. Failure to Investigate Existence of Firearm

Guzman next claims that his trial counsel was ineffective by not investigating the existence of the "sawed-off shotgun" found in the building in which Guzman resided. He asserts that in light of his counsel's argument at sentencing that the firearm did not exist at the premises or that it had been planted there by law enforcement, counsel should have further investigated -- either by viewing and inspecting the shotgun or by interviewing persons having knowledge of either the shotgun or Guzman's offer to sell the shotgun to the CS (namely, the ATF agent who took custody of the seized shotgun, the CS himself, or the agent who monitored and translated the conversations). He further contends that had counsel done so, his sentence would not have been enhanced for his possession of a firearm.[9] (See Motion to Vacate, Ground Five; Pet. Memo at 13-16.)

"'In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to

---

[7] It appears that Guzman's criminal history points total to eight rather that seven, as stated in the revised PRS. This discrepancy, however, is immaterial, as 7-9 criminal history points establish a criminal history level of IV, under which Guzman was sentenced. See U.S.S.G. Chap. 5, Part A, Sentencing Table.

[8] This conclusion also disposes of Guzman's claim, not developed, that his appellate counsel was ineffective for failing to raise the Criminal History issue on appeal. (Motion To Vacate, Ground Two.)

[9] The two-point firearm enhancement was upheld by the Court of Appeals on direct appeal. See Guzman, No. 02-2433, Judgment at *1.

counsel's judgments.'" Dugas v. Coplan, 428 F.3d 317, 327-328 (1st Cir. 2005) (quoting Strickland, 466 U.S. at 690-691, 104 S.Ct. 2052). Here, Attorney Schechter's decision not to investigate the existence of the shotgun was not unreasonable, because as he explained at the sentencing hearing, verifying the firearm's presence in the custody of the ATF did not resolve whether or not it had been planted at Guzman's apartment on the day of the search. (See Sent. Tr. at 55-56.) Similarly, counsel could have reasonably believed that interviewing the CS and/or the monitoring agent would likely have only yielded information that confirmed, rather than disputed, Guzman's offer to sell the shotgun and that questioning the ATF agent would similarly not be fruitful. Guzman makes no showing as to what these witnesses would have said or what information helpful to him would have been gleaned from them. In short, counsel's decision not to invest time in these efforts was a reasonable exercise of professional judgment, which should not be distorted in hindsight. See Coplan, 428 F.3d at 327-328.

3. Failure to Object to Obstruction-of-Justice Enhancement and Denial of Reduction for Acceptance of Responsibility

Guzman also claims that his trial counsel rendered ineffective assistance because he conceded, rather than challenged, the obstruction-of-justice enhancement and because he did not contest the Government's refusal to recommend any reduction for acceptance of responsibility. Guzman contends that by not recommending a reduction in sentence and instead seeking an enhancement on obstruction-of- justice grounds, the Government breached the plea agreement. (See Motion to Vacate, Ground Six; Pet. Memo at 16-18.)

This claim is likewise meritless. Any attempt to contest the obstruction-of-justice enhancement or to seek an offense level decrease for Guzman's acceptance of responsibility would have risked being deemed frivolous in light of (1) the numerous aliases used by Guzman in an attempt to deceive law enforcement, the U.S. Probation Office and the Court, and (2) the

weight of adverse First Circuit case law on this very issue. See Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999)("failing to pursue a futile tactic does not amount to constitutional ineffectiveness")(internal quotations omitted).

Moreover, in upholding the obstruction-of-justice enhancement and the denial of an offense level reduction for acceptance of responsibility on direct appeal, the Court of Appeals noted that it considered Guzman, and not the Government, to have broken the plea agreement between the parties. See Guzman, No. 02-2433, Judgment at *1. Thus, there was no prejudice.

C. Ineffective Assistance Claims – Appellate Counsel

In assessing the performance of appellate counsel, the standards enunciated in Strickland apply. See Smith v. Robbins, 528 U.S. 259, 285, 120 S.Ct. 746 (2000). That is, an appellate attorney's decision whether or not to raise an issue on appeal must be deemed objectively deficient and must result in prejudice to the defendant, i.e., but for counsel's unreasonable failure to raise an issue, the defendant would have prevailed on appeal. Id. at 285-286. See also Smith v. Murray, 477 U.S. 527, 535, 106 S.Ct 2661 (1986); Evitts v. Lucey, 469 U.S. 387, 395 (1985) (applying Sixth Amendment guarantees enunciated in Strickland, to a defendant's first appeal).

Moreover, "[a]ppellate counsel is not required to raise every non-frivolous claim, but rather selects among them to maximize the likelihood of success on the merits." Lattimore v. Dubois, 311 F.3d 46, 57 (1st Cir. 2002) (citing Robbins, 528 U.S. at 288, 120 S.Ct. 746). See Murray, 477 U.S. at 536, 106 S.Ct. at 2667 ("the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy") (internal quotations and citations omitted). Evitts, 469 U.S. at 394, 105 S.Ct. at 835 (an appellate attorney "need not advance every argument, regardless of merit, urged by the appellant").

Guzman raises two claims of ineffective assistance on the part of his appellate counsel, both of which may be readily disposed of under the foregoing principles.

1. Failure to Appeal the Admission of Firearm for Enhancement Purposes

Guzman first claims that appellate counsel was deficient for failing to argue that the sentencing court applied an incorrect standard from United States v. Acosta, 303 F.3d 78 (1st Cir. 2002), in determining whether to exclude the firearm from sentencing. In Acosta, the First Circuit held that "the exclusionary rule does not bar the use of evidence seized in violation of a defendant's Fourth Amendment rights in sentencing." 303 F.3d. at 86. The court left open the question of whether such evidence might be excluded if the police intentionally violated the Fourth Amendment for the purpose of sentence enhancement. Id.

Guzman argues that, if requested, the Court of Appeals would have adopted a rule excluding an unlawfully seized item at sentencing, where the law enforcement agent's intent in seizing the item was to secure an increased sentence, and then would have applied the new rule to exclude the firearm from being considered at his sentencing. (See Pet. Memo at 18-24.)

This Court need not plumb the issue of an exclusionary rule for sentencing hearings, nor predict whether the First Circuit would establish new law on that issue in order to reject this claim. The Court's finding at sentencing that the agents did not intentionally seize the shotgun for the express purpose of obtaining a sentencing enhancement, made after its review of Acosta and hearing arguments of counsel, was well supported by the evidence presented. As the Court noted, Agent Drouin testified that the agents initially believed that the basement area was included in the search warrant and did not learn otherwise until the shotgun had been discovered and seized. (Sent. Tr. at 65-66.) Moreover, the basement was expressly mentioned in his affidavit supporting the application for the warrant. (Id. at 37-39.) Thus, Guzman's appellate

counsel could have reasonably decided that appealing this Court's application of Acosta would not likely have succeeded.

Guzman's contention that the agents' decision not to return the firearm to the basement once they learned that the basement was off limits somehow constituted clear evidence of their intention to seek to increase his sentence is far-fetched at best, and appellate counsel could have wisely chosen not to raise it. See Lattimore, 311 F.3d at 57 (counsel may select claims most likely to succeed on appeal) .

2. Appellate Counsel's Failure to Raise Hearsay Objection on Appeal

Guzman's claim that appellate counsel was ineffective by failing to challenge the introduction of Agent Drouin's hearsay testimony during the sentencing hearing (see Pet. Memo at 24-27) is likewise without merit. It has been well established in the First Circuit and elsewhere that hearsay evidence is admissible during sentencing hearings. See e.g. United States v. Luciano, 414 F.3d 174, 178-179 (1st Cir. 2005) and cases cited. In Luciano the court found that Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004),[10] did not modify this rule. Luciano, 414 F.3d at 179.

In view of this case law, appellate counsel's decision not to challenge this Court's allowance of hearsay evidence at sentencing was not objectively deficient, nor was there a reasonable probability that the result of the appeal would have been different had the issue been raised. Lattimore, 311 F.3d at 56 (citing Strickland, 466 U.S. at 694, 104 S.Ct. 2052).

This Court has considered Guzman's other arguments and finds them to be without merit.

---

[10] In Crawford, the Supreme Court held that out-of-court testimonial statements by witnesses are barred at trial by the Confrontation Clause, unless witnesses are unavailable and the defendant had a prior opportunity to cross-examine them, regardless of whether such statements are deemed reliable. 541 U.S. at 68-69, 124 S.Ct. at 1374.

## CONCLUSION

For all the foregoing reasons, Guzman's motion to vacate is denied and dismissed.

IT IS SO ORDERED:

Mary M. Lisi

Mary M. Lisi
Chief U.S. District Judge
Date: January 17, 2007